1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| YUL CASHMAN,                                ) | |
|                     Plaintiff,          ) | Case No.  2:10-cv-01852-RLH-GWF |
| vs.                                                     ) | **ORDER** |
| COLORADO CASUALTY INSURANCE      ) COMPANY, *et al.*,                            ) | Motion to Adjudicate Attorney Lien (#17) |
|               Defendants.        ) | |

This matter is before the Court on Plaintiff Yul Cashman's Motion to Adjudicate Attorney's Lien (#17), filed April 4, 2011; Tommy F. Deaver, Esq.'s Opposition to Motion to Adjudicate Attorney's Lien (#18), filed April 26, 2011; and Plaintiff's Reply in Support for Motion to Adjudicate Attorney's Lien (#19), filed May 6, 2011.

## DISCUSSION

### I.      Background

Plaintiff Yul Cashman requests that the Court adjudicate the attorney's lien claimed by Plaintiff's former counsel Tommy F. Deaver, Esq. (#17). On April 9, 2009, Plaintiff retained Deaver as counsel in a personal injury action related to a motor vehicle accident. (#17 at 1). Three months later, Plaintiff terminated Deaver's services in writing and retained Matthew Vannah, Esq. as counsel to represent him in the personal injury case. (*Id.* at 1-2). In his July 28, 2009 termination letter, Cashman requested that Deaver forward a copy of his file to his new counsel, Mr. Vannah. (*Id.*) Mr. Deaver responded on August 19, 2009 by forwarding an attorney's lien to Vannah's office for $2,705.30. (*Id.* at 2).

. . .

In the present motion, Cashman requests an order from the Court determining the proper amount of Deaver's attorney's lien.  (#17).  Plaintiff argues that the attorney's lien filed by Deaver is excessive because Deaver allegedly charged Cashman higher than a reasonable attorney rate for the services rendered and includes charges for non-attorney services.  (#17).  Mr. Deaver responds that the attorney rate charged is reasonable for an attorney in the Las Vegas market with 30 years of legal experience.  (#18 at 5).  In addition, Deaver argues that he performed all of the services billed for and listed in the attorney's lien in part because he operates as a sole practitioner.  (*Id.* at 5-6).

Based on the dispute, Plaintiff asks the Court to adjudicate the attorney's lien and determine the reasonable attorney's fees owed to Mr. Deaver.  (#17).

**II.     Charging Lien**

Nevada recognizes two kinds of attorney's liens: (1) a special "charging lien" and (2) a "retaining lien".  *See* Nevada Revised Statute ("N.R.S.") § 18.015; *Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish*, 216 P.3d 779, 784 (Nev. 2009)  A statutory "charging lien" attaches to the judgment or settlement that the attorney obtained for the client. N.R.S. § 18.015; *Figliuzzi v. Eight Judicial Dist. Court In and For County of Clark*, 890 P.2d 798, 801 (Nev. 1995).  By contrast, a "retaining lien" arises under common law and allows a discharged attorney to withhold the client's file and other property until the court, at the request or consent of the client, adjudicates the client's rights and obligations with respect to the lien. *Argentena Consol. Min. Co.*, 216 P.3d at 784; *Figliuzzi*, 890 P.2d at 801.

Although Deaver characterizes his attorney lien as arising under NRS § 18.015, he has no basis for asserting a statutory charging lien, because he did not obtain a judgment or settlement for his client.  Under Nevada law, an attorney who has not obtained a settlement or judgment for the client may not use N.R.S. § 18.015 to enforce an attorney's lien.  *Michel v. Eighth Judicial Dist. Court ex rel. County of Clark*, 17 P.3d 1003, 1006-07 (Nev. 2001), citing, *Figliuzzi*, 890 P.2d at 801.  Because Mr. Deaver did not obtain a settlement or judgment for Cashman, he may not assert a retaining lien.

. . .

2

## II.     Retaining Lien

The Nevada Supreme Court has held that ". . . the court in the action in which the attorney's services were rendered has incidental jurisdiction to resolve disputes between a litigant and his attorney relative to the establishment of an attorney's lien." *Gordon v. Stewart*, 74 Nev. 115, 118, 324 P.2d 234 (1958).  A retaining lien entitles an attorney "to retain the client's papers, property or money until a court, at the request of the client, requires the attorney to deliver the retained items upon the client's furnishing of payment or security for the attorney's fees." *Figliuzzi*, 890 P.2d ay 801.  This right depends on the possession of the actual file.  *Morse v. Eighth Judicial District Court in and for Clark County*, 65 Nev. 275, 282, 195 P.2d 199 (1948). Pursuant to a retaining lien, an attorney may recover outstanding compensation "for all professional services performed whether in the action itself or in prior actions or for general legal services."  *Montgomery v. eTreppid Technologies, LLC*, 2008 WL 820072 (D.Nev. 2008) (quoting *Morse*, 195 P.2d 199).  Under common law, Deaver holds a retaining lien on the client files in his possession.  As a result, the Court will adjudicate the attorney's lien and determine the amount of fees and costs Plaintiff owes to Deaver for his work on this action.

## III.     Quantum meruit

Notwithstanding the contingency fee retainer agreement that Cashman entered into with Deaver, an attorney's lien is adjudicated based on quantum meruit.  *Golightly v. Gassner*, 2009 WL 1470342, *2 (Nev., Feb. 26, 2009); *see also Crocket & Myers v. Napier, Fitzgerald & Kirby*, 401 F.Supp.2d 1120, 1124 (D.Nev. 2005)  A claim for *quantum meruit*, rather than breach of contract, applies because the Nevada Supreme Court has long recognized that a client has an unconditional right to discharge his attorney with or without cause.  *Golightly*, 2009 WL 1470342 at *2, citing *In re Kaufman*, 93 Nev. 452, 456, 567 P.2d 957, 960 (1977)); *see also Morse*, 195 P.2d at 204.  When the attorney is discharged and the contract is terminated, "the attorney may be compensated for the reasonable value of his services under quantum meruit principles."  *Golightly*, 2009 WL 1470342 at *2; *see also Gordon*, 324 P.2d 234; *Cooke*, 114 P.2d 87; Nevada Rule of Professional Conduct 1.5(a) (imposing upon attorneys an ethical obligation to "not make an agreement for, charge, or collect an unreasonable fee or an

3

unreasonable amount for expenses").

In determining the reasonable value for legal services rendered, the Court may consider either the "applicability of established customs" or the amount the parties orally agreed upon. *See Asphalt Products Corp. v. All Star Ready Mix, Inc.*, 111 Nev. 799, 802, 898 P.2d 699 (1995); *see also Flamingo Realty, Inc. v. Midwest Development, Inc.*, 110 Nev. at 984, 988, 879 P.2d 69 (1994) (affirming the applicability of "established customs" in determining the reasonable value and rate of compensation in the real estate industry).  In *Gordon v. Stewart*, the Nevada Supreme Court stated:

> The amount of the agreed fee is certainly a proper consideration upon a determination, in quantum meruit, of reasonable value; but just as clearly, it cannot be held to be the controlling or dominant consideration. Quantum meruit contemplates that the true reasonable value is to be substituted for the agreed terms. Discrepancies between value and agreed terms are bound to occur in every case.

*Gordon*, 74 Nev. at 119, 324 P.2d 234.

In determining whether the evidence supports the District Court's determination of what constitutes "reasonable value," the Nevada Supreme Court has used the "substantial evidence" standard. *See Asphalt Products*, 111 Nev. at 803, 898 P.2d 699.  "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).  As a result, a district court has "wide discretion in calculating an award of damages" under the doctrine of quantum meruit. *Flamingo Realty*, 110 Nev. at 987, 879 P.2d 69.

**IV.    Reasonable Hourly Rate and Hours Worked**

Deaver billed Plaintiff for legal work performed at the rate of $250.00 an hour.  Cashman argues that this is an excessive rate for the specific work that Deaver performed.  (#17).  Deaver responds that $250.00 per hour is a reasonable rate in the Las Vegas market for an attorney with 30 years of legal practice experience.  (#18).  The Court agrees and finds that $250.00 is a reasonable hourly rate for the services provided by Mr. Deaver.

Mr. Deaver requests reimbursement for 10.6 hours of attorney work based on time spent on various tasks, including reviewing medical records, consulting with the client, and

corresponding with the defendant insurance company.  (#17 at 4-6; #18).  Based on the attorney

hours billed, Deaver asserts an attorney's lien in the amount of $2,705.30.  (#18).  He has not,

however, demonstrated that all of the work performed merits billing at an attorney rate.  Deaver's

billing records indicate that he spent 2.0 hours requesting and retrieving records from the Las

Vegas Metropolitan Police Department and Mr. Cashman's medical providers.  (#17 at 4-5).

These tasks are clerical functions and do not involve the practice of law or require a lawyer's

training.  Accordingly, the Court will reduce the total number of hours billed by Deaver to 8.6

hours.

Based upon the foregoing, this court finds that the reasonable amount of the attorney's

fees former counsel shall be entitled to recover is $2,150.00.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Yul Cashman is ordered to pay his former

counsel, Tommy Deaver, the total sum of **$2,150.00**.  Plaintiff is further ordered to make the

payment to Deaver by **June 20, 2011**.

DATED this 1st day of June, 2011.

**GEORGE FOLEY, JR.**
**United States Magistrate Judge**

5